Nancy **HERRINGTON**, Plaintiff,

v.

**MISSISSIPPI REGIONAL MEDICAL CENTER; Lee Hayden, Individually and in his Official Capacity; Thomas O. Logue, Jr., Individually and in his Official Capacity; Thomas E. Parker; J. W. Bryant; Melvin C. Starrett; James W. Bell; Willie Mae Lund; L. L. Hightower; and William K. Sharp, in their Official Capacities as Members of the Board of Trustees of Southwest Mississippi Regional Medical Center, Defendants.**

Civ. A. No. J77–0396(N).

United States District Court, S. D. of Mississippi, Jackson Division.

May 6, 1981.

T. Mack Brabham, McComb, Miss., George M. Strickler, Jr., New Orleans, La., Clyde Ratcliff, McComb, Miss., for plaintiff.

Armin Moeller, Fuselier, Ott and McKee, Jackson, Miss., John Gordon Roach, Jr., Norman B. Gillis, Jr., McComb, Miss., Louis A. Fuselier, Jackson, Miss., for defendants.

## MEMORANDUM OPINION

WALTER L. NIXON, Jr., District Judge.

This matter is before the Court on Defendant's Motion for a Judgment in Accordance with the Answers to Interrogatories, or Alternatively, for Judgment Notwithstanding the Verdict, and the Plaintiff's Motion to Correct and Amend the Judgment. *See* Fed.R.Civ.P. 49, 50, 59 and 60.

On November 26, 1977, the Plaintiff filed a complaint alleging that her discharge from the Southwest Mississippi Regional Medical Center "constituted a denial of her rights of free speech, due process and equal protection of the laws as guaranteed by the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983." This matter was tried before a jury on February 9–13 and February 16–19, 1981. On February 20, 1981, the jury submitted their answers to certain interrogatories propounded to them by the Court and returned a verdict against Defendant Hayden for $100,000 in compensatory damages, but absolved all other defendants of liability.

The Court recognizes the complex nature of the instant litigation as a rapidly changing field of law. The problem is to first determine if the speech is constitutionally protected. If it is found to be so protected, and also found to be a motivating

factor in the discharge, then the Court's duty is to arrive at a balance between the interests of the Plaintiff as a citizen in commenting upon matters of public concern, and the interests of the public hospital and its officials as her employer, in promoting the safe and efficient delivery of quality health care services. *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968); *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 411, 99 S.Ct. 693, 694, 58 L.Ed.2d 619 (1979); *Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 284, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977). The ultimate balancing of interests between the plaintiff and the hospital with regard to First Amendment protection is a question of law for the Court. *Schneider v. City of Atlanta*, 628 F.2d 915, 918–19 (5th Cir. 1980). Pursuant to the procedure used by numerous courts in such cases, certain factual issues and mixed questions of fact and law inherent in the balancing test were submitted to the jury through interrogatories. *See Schneider v. City of Atlanta*, 628 F.2d 915, 919, fn.4 (5th Cir. 1980).

■ The jury found that the plaintiff's criticisms of Hayden for alleged false overtime charges and manipulation of the work schedule were only personal complaints and not matters of public concern, and therefore did not constitute speech protected by the First Amendment (Interrogatory No. 2D). While these answers are not binding on the Court, the conclusion reached by the jury is supported by the overwhelming weight of the evidence. Consequently, the Court finds that plaintiff's criticisms did not constitute speech protected by the First Amendment. *Garza v. Rodriguez*, 559 F.2d 259 (5th Cir. 1977); *Megill v. Board of Regents of the State of Florida*, 541 F.2d 1073 (5th Cir. 1976).

While the above threshold findings by the Court and the jury would be dispositive of the plaintiff's First Amendment claims, we must proceed further with the analysis of the record in view of the possibility that the Court may be in error in its classification of plaintiff's speech as unprotected by the First Amendment. Such an assumption would require us to apply the proper balancing test to the facts of the case. In doing so, the Court finds the following language in *Pickering, supra*, 391 U.S. at 569–70, 88 S.Ct. at 1735, instructive:

The statements are in no way directed toward any person with whom appellant would normally be in contact in the course of his daily work as a teacher. Thus, no question of maintaining either discipline by immediate superiors or harmony among co-workers is presented here. Appellant's employment relationships with the Board and, to a somewhat lesser extent, with the superintendent are not the kind of closeworking relationships for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning.

Further, in footnote 3 of the *Pickering* decision the Court found:

Likewise, positions in public employment in which the relationship between superior and subordinate is of such a personal, intimate nature that certain forms of public criticism of the superior by the subordinate would seriously undermine the effectiveness of the working relationship between them, can also be imagined. We intimate no view as to how we would resolve any specific instances of such situations, but merely note that significantly different considerations would be involved in such cases.

The above language was stressed by Judge Gewin in his dissenting opinion in *Abbott v. Thetford*, 529 F.2d 695 (5th Cir. 1976), which was ultimately adopted by the Fifth Circuit *en banc*, *Abbott v. Thetford*, 534 F.2d 1101 (5th Cir. 1976).

■ The jury found that anesthetists enjoyed the kind of closeworking relationships requiring personal confidence and loyalty for the proper functioning of the Anesthesia Department (Interrogatory No. 1D); that the plaintiff's criticisms caused substantial disruption in the Anesthesia Department, adversely affecting discipline by immediate superiors (Interrogatory No. 1A); that the plaintiff's criticisms seriously

undermined the effectiveness of her working relationship with Chief Anesthetist Hayden (Interrogatory No. 2C). Considering the evidence in the case, the Court agrees with the jury's findings. Since the plaintiff was an anesthetist and Defendant Hayden was Chief Anesthetist in the Anesthesia Department, their work involved the delicate task of administering anesthesia to patients where life and death literally hung in the balance. In this extremely important and delicate function of the hospital, the lives of the patients were in the hands of the anesthetists. Harmony among co-workers is of the utmost importance, and questions concerning departmental discipline were clearly presented by the plaintiff's conduct.

The Court finds, as did the jury, that the plaintiff's criticisms undermined the effectiveness of the working relationship between Chief Anesthetist Hayden and the plaintiff which was essential to efficient and safe departmental operations. As the Court stated in *Pickering, supra,* 391 U.S. at 570 fn.3, 88 S.Ct. at 1735 fn.3, where the criticism of a superior by a subordinate undermines the effectiveness of their working relationship "significantly different considerations" are involved.

The Court finds that such significantly different considerations are present here. Thus, the Court must scrutinize more carefully the evidence which assertedly supports the plaintiff's position. After carefully examining all of the evidence, the Court finds that the *Pickering* balance weighs heavily in favor of all the defendants.

Even if the Court is in error with respect to the above findings of fact and conclusions of law, the Supreme Court in *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977), held that a public employee should not be placed in a better position by engaging in protected conduct and that a public employer is absolved of liability if it shows "by a preponderance of the evidence that it would have reached the same decision as to respondent's re-employment even in the absence of the protected conduct."

The jury found that the plaintiff would have been fired anyway for the reasons stated in Administrator Logue's letter of July 11, 1977 (Interrogatory No. 5B).

It is instructive that Administrator Logue's letter did not refer to the plaintiff's alleged protected criticisms and that the evidence clearly shows that the plaintiff was involved in the misconduct stated in the letter. Since all of the defendants proved by a preponderance of the evidence that the plaintiff would have been fired in any event for legitimate, nondiscriminatory reasons, the defendants carried their burden of proof absolving them from all liability. Accordingly, the Court finds that the answers to the interrogatories are consistent with each other and consistent with the jury verdict in favor of the Southwest Mississippi Regional Medical Center, its Board of Trustees, and Administrator Logue which verdict is supported by substantial evidence.

The Court prepared a general verdict form permitting the jury to return verdicts against Administrator Logue, Chief Anesthetist Hayden, the Board of Trustees, and Southwest Mississippi Regional Medical Center. The general verdict form did not distinguish between liability in the official's individual and official capacity, and no party objected to the general verdict form as submitted to the jury. The Court understood that any verdict against an individual defendant would represent a verdict against that defendant in both their individual and official capacities.

The plaintiff requests that liability be imposed upon the hospital because Hayden recommended the plaintiff's termination. However, the facts establish that he had no authority to terminate the plaintiff, who, in fact was terminated by Administrator Logue following his own independent investigation. The Court finds that Hayden's actions did not represent official policy or constitute action by the hospital. The plaintiff failed to identify any hospital policy which has adversely affected her First and Fourteenth Amendment rights. The jury found that Logue acted in good faith

in terminating the plaintiff (Interrogatory No. 6B). Plaintiff's evidence indicated that Hayden acted out of personal animus rather than the execution of hospital policy. Consequently, the hospital cannot be liable, since Hayden's recommendation did not represent the "final authority" of the hospital. *Van Ooteghem v. Gray*, 628 F.2d 488, 494 (5th Cir. 1980).

The Court concludes that Defendant Hayden is absolved of any individual liability. The jury found that the plaintiff's criticisms were a matter of personal concern to her and not a matter of public concern (Interrogatory No. 2D.) Further, the jury determined that the plaintiff's criticisms disrupted departmental operations. Since the plaintiff's speech was not protected by the First Amendment, there can be no finding of a constitutional violation.

Assuming that the Court could be mistaken in adopting the jury's findings as discussed above, it is the Court's responsibility to apply the ultimate phase of the balancing test. *Schneider, supra.* Considering the close personal relationships necessary to the safe and efficient administration of anesthesia to patients where life and death hang in the balance, together with the evidence in support of the jury's findings to Interrogatories 1 and 2, the ultimate balance weighs heavily in favor of all defendants.

Although the issue of defamation was not before the Court, plaintiff's evidence that Hayden acted out of personal animus was probably what precipitated the return of the general verdict against Hayden, i. e., an apparent defamation verdict. However, as stated herein, this verdict was inconsistent with the interrogatories which were based exclusively on plaintiff's constitutional allegations.

The Court finds that the jury's answers to the interrogatories on the issue of the case are consistent with each other but inconsistent with the verdict against Hayden. Therefore, in accordance with Fed.R. Civ.P. 49, a judgment consistent with the jury's answers to interrogatories must be entered, notwithstanding the jury's verdict, in favor of Defendant Hayden. While the Court does not believe the answers are inconsistent with each other, in the event they would be found to be inconsistent, it is clear that certain answers to the interrogatories would be inconsistent with any verdict against Hayden. Consequently, Fed.R. Civ.P. 49 would require a new trial as to the defendant Hayden.

In summary, the Court finds, as did the jury, that the plaintiff's criticisms were not protected under the First Amendment. In any event, the defendants proved that the plaintiff would have been fired even in the absence of the alleged protected speech. Applying the ultimate balance to the issues of fact and law in the case, the Court concludes that the ultimate balance weighs heavily in favor of the hospital's interest in providing anesthesia services to the public unencumbered by internal strife and discord.

For the above reasons, the plaintiff's Motion to Correct and Amend the Judgment is denied. The defendants' Motion for Judgment in Accordance with the Answers to Interrogatories, or Alternatively, for Judgment Notwithstanding the Verdict is granted. The Court finds that the jury's answers to the interrogatories are consistent with each other, but inconsistent with the verdict against Hayden. If the Court is mistaken in the above analysis, the defendant Hayden would be entitled to a new trial under Fed.R.Civ.P. 49.